**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EMILY L. S., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-14719 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Emily L. S. seeks to overturn the final decision of the Commissioner

of Social Security ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles

II and XVI of the Social Security Act. The parties consented to the jurisdiction of the

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-

motions for summary judgment. After review of the record and the parties'

respective arguments, the Court grants the Commissioner's motion and denies

plaintiff's motion.

## BACKGROUND

Plaintiff protectively applied for SSI and DIB benefits on September 1, 2020

alleging disability since August 5, 2020 due to schizoid affective disorder, bipolar

disorder, and generalized anxiety disorder. Administrative Record ("R.") 64, 264,

270, 296. Born in March 1988, plaintiff was 32 years old as of the alleged onset date,

making her a younger person (under age 50). 20 C.F.R. § 404.1563(c); 20 C.F.R.

§ 416.963(c). R. 264. She has a high school diploma and spent 12 years working as a preschool teacher. R. 297, 788. Plaintiff quit her job on August 5, 2020 because she became pregnant and found it too difficult to watch children all day and then go home to her own kids, R. 75, 788, and has not engaged in substantial gainful activity since that date. R. 67.

The Social Security Administration denied plaintiff's applications initially on June 7, 2021, and upon reconsideration on January 11, 2022. R. 99-150. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on November 21, 2022 to review her claim. R. 86. Plaintiff's counsel appeared at the hearing but plaintiff did not and failed to provide good cause for her absence. R. 64. The ALJ heard testimony from vocational expert Robert Verkins (the "VE").[1] R. 88-98. On February 27, 2023, the ALJ found that plaintiff's schizoaffective disorder, bipolar disorder, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and substance use disorder are severe impairments, but that they do not alone or in combination with plaintiff's non-severe physical impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 67-70.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform work at all exertional levels with certain mental restrictions. R. 70-78. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past work as a preschool teacher but could

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

perform a significant number of other jobs available in the national economy. R. 78-79. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 79-80. The Appeals Council denied plaintiff's request for review on August 10, 2023. R. 1-6. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, plaintiff argues that the ALJ: (1) made a flawed mental RFC determination; and (2) erred in evaluating her subjective statements regarding her symptoms.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## **DISCUSSION**

### A.    **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

less than 12 months."[3] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54

---

[3] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

(internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## B.    Analysis

### 1.    Mental RFC

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in assessing her mental RFC. Dkt. 15 at 7-12; Dkt. 20 at 3-10.[4] A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 CV 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 CV 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that plaintiff can: understand, remember, and carry out simple 1-2 step instructions with simple work-related decisions; maintain sufficient persistence, pace, and concentration in two-hour segments allowing for normal breaks; never interact with the general public as part of the job duties; relate appropriately with supervisors and coworkers; and tolerate changes in the routine work setting consistent with simple work. R. 70. In reaching this conclusion, the ALJ was persuaded by the opinions from state agency psychological reviewers

---

[4] This opinion cites to the CM/ECF number at the top of the page.

Donna Hudspeth, Psy.D., and Michele Womontree, Psy.D. Both experts agreed that given plaintiff's moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace, she should not deal with the public but is otherwise able to: relate to a supervisor and fellow employees; understand, remember, and perform at least 1-2 step tasks in the work setting; negotiate transportation to get to work environments; follow work guidelines; and make decisions appropriate to this level of work activity. R. 108, 113, 124, 129, 138, 140, 146, 148.

Plaintiff does not dispute that it was proper for the ALJ to rely on the state agency opinions. Rather, plaintiff contends that the ALJ erred in rejecting one aspect of Dr. Womontree's assessment. Dkt. 15 at 8; Dkt. 20 at 3. In the check-box portion of her opinion, Dr. Womontree indicated that plaintiff is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 140, 148. Plaintiff argues that the ALJ's decision to omit that restriction from the RFC is not supported by substantial evidence. Dkt. 15 at 8; Dkt. 20 at 3.

Plaintiff's argument fails because the ALJ expressly acknowledged the stated limitation in completing a normal workday and performing at a consistent pace, and explained why it was unpersuasive: Dr. Womontree did not tie the limitation to any specific work-related restrictions. R. 77. Dr. Womontree simply affirmed Dr. Hudspeth's assessment that plaintiff can perform at least 1-2 step tasks, follow

work guidelines, and make decisions appropriate to this level of work activity. R. 113, 129, 140, 148. *Compare Michelle P. v. O'Malley*, No. 21 CV 1871, 2024 WL 1719449, at *3 (N.D. Ill. Apr. 22, 2024) (remanding where the ALJ "never explained why she found the consultants' opinions 'persuasive,' yet declined to incorporate into Michelle's RFC moderate check-box limitations they endorsed.").

Plaintiff responds that the ALJ should have recontacted Dr. Womontree to inquire about additional limitations attributable to her moderate deficits in completing a normal workday and performing at a consistent pace. Dkt. 15 at 8-9; Dkt. 20 at 5-7. However, the Seventh Circuit has made clear that a court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Here, the ALJ reasonably relied on identical narrative assessments from Dr. Hudspeth and Dr. Womontree and committed no error in declining to secure additional information from the consultative reviewers. *Cf. Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *5 (7th Cir. 2023) (citing 20 C.F.R. § 404.1519p(b) ("[T]he ALJ did not fulfill his regulatory duty to recontact Dr. Linford—the agency's consulting *examiner*—upon finding the doctor's report inadequate.") (emphasis added).

Plaintiff objects that the RFC is still flawed because the limitation to simple work does not accommodate her moderate deficits in concentration, persistence, or pace ("CPP"). Dkt. 15 at 9-10; Dkt. 20 at 4-5 (citing *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (a limitation to simple, routine tasks does not adequately capture "temperamental deficiencies and limitations in concentration, persistence,

7

and pace.")). As noted, however, the ALJ determined that plaintiff is not only limited to simple work but also capable of "maintain[ing] sufficient persistence, pace, and concentration in two-hour segments allowing for normal breaks." R. 70, 75-76.

Plaintiff claims that the two-hour timeframe is no limitation at all, arguing that a person without CPP deficits is expected to meet the same requirements. Dkt. 15 at 9-10; Dkt. 20 at 4-5 (citing Program Operations Manual System 25020.010(B)(3)(d), https://secure.ssa.gov/poms.nsf/lnx/0425020010, *archived at* https://perma.cc/3H2N-HEE3) (noting that unskilled work requires "[m]aintain[ing] attention for extended periods of 2-hour segments."). To the contrary, while "[n]on-impaired workers can sustain focus for *at least* two hours," the RFC set forth by the ALJ "*limits* [plaintiff]'s sustained attention to two hours at a time." *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021). Plaintiff's speculation that she "likely could not complete a normal fulltime work schedule" and "would likely require" additional breaks, supervision, or other unspecified accommodations, Dkt. 20 at 4, 5, is insufficient to establish that the ALJ's RFC determination is unsupported by substantial evidence. *See Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence.") (internal quotations omitted); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.").

There is likewise no merit to plaintiff's argument that the ALJ ignored her waxing and waning symptoms or cherry-picked evidence that weighed against a finding of disability. Dkt. 15 at 10-12; Dkt. 20 at 7-10. The ALJ discussed the medical and testimonial evidence in detail, including: (1) a psychiatric hospitalization from August 7, 2020 to August 19, 2020 because plaintiff was having command hallucinations to kill herself with evidence of crack cocaine, heroin, and marijuana use, R. 71, 559, 647, 668; (2) readmission to the hospital from August 25, 2020 to September 11, 2020, with suicidal ideations and psychosis combined with extensive substance abuse, R. 71, 580, 605; (3) medication management appointments with Brian Salzverg, M.D., from September 25, 2020 through July 25, 2022, showing preoccupations and impaired attention and concentration, but normal perception, logical thought process, an anxious to normal mood, partial to normal insight, and mildly impaired to normal judgment, R. 72-74, 715, 722-23, 737-38, 746, 755, 815, 823, 831, 839, 847, 855, 871, 942, 945, 954, 964, 973, 982, 991, 1001; (4) a May 25, 2021 psychological consultative exam that was largely unremarkable aside from some deficits in memory, attention, and concentration, R. 72-73, 787-89; (5) nursing notes from September 2021, October 2021, and November 2021 documenting normal mood and affect, R. 73-74, 1078, 1088, 1096; and (6) a psychiatric hospitalization from October 15, 2022 to October 22, 2022 for increasing suicidal ideation and a positive methamphetamine test. R. 74-75, 1240-41.

While plaintiff believes this evidence reflects that she cannot concentrate sufficiently to sustain full-time work and would be off-task or absent an excessive amount of time, this Court's "role . . . is not to 'reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination.'" *Morales*, 103 F.3d at 471 (quoting *Gedatus*, 994 F.3d at 900). "Even if there is conflicting evidence that allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the ALJ's resolution of that conflict." *Tracie H. v. Saul*, 388 F. Supp. 3d 990, 996 (N.D. Ill. 2019). Notably, plaintiff does not identify any physician of record who found her more limited than the ALJ. *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal").

Finally, plaintiff argues that the ALJ erred by soliciting testimony from the VE about employer tolerances for absenteeism and off-task time but not including such restrictions in the RFC. Dkt. 15 at 12. The Court disagrees. "[I]t is not reversible error where the hypothetical question posed to the VE was more restrictive than the limitations the ALJ ultimately assigned to the claimant." *Kathleen C. v. Saul*, No. 19 CV 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020); *see also Luis F.V. v. Kijakazi*, No. 20 CV 6618, 2022 WL 2208854, at *4 (N.D. Ill. June 21, 2022) ("The fact that an ALJ considers adding a . . . limitation to an RFC does not establish that such a limitation is ultimately warranted.").

10

Viewing the record as a whole, the ALJ provided sufficient reasons for the mental RFC determination and the restrictions fairly account for plaintiff's functional limitations. Since that decision is supported by substantial evidence, the case need not be remanded for further consideration of this issue. *See Salvador H. v. Kijakazi*, No. 22 CV 7254, 2023 WL 5017944, at \*5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 587 U.S. at 103) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

## 2.    Subjective Symptom Evaluation

Plaintiff argues that the ALJ also erred in assessing her subjective statements regarding her symptoms. Dkt. 15 at 12-16; Dkt. 20 at 10-12. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at \*5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 CV 5966, 2022 WL 2828741, at \*8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not

11

overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

The ALJ found that plaintiff's complaints of disabling mental symptoms were inconsistent with objective evidence. For example, all of plaintiff's inpatient psychiatric hospitalizations occurred in the context of substance abuse and she did not always report the drug use to her medical providers. R. 75, 649 and 670 (plaintiff "plans to go to rehab" following August 2020 hospitalization), 1240 (plaintiff "has been engaging in use of methamphetamines" at time of October 2022 hospitalization). Once plaintiff was discharged, she consistently presented to Dr. Salzverg with normal perception, thought content, cognition, insight, and/or judgment. R. 75, 831, 847, 1009, 1017, 1025, 1041. *See Thorps v. Astrue,* 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record"). The ALJ also noted that plaintiff stopped attending therapy sessions for a year between June 2021 and June 2022 with no symptom exacerbation. R. 75, 807, 1172. *See Gwendolyn B. v. Saul*, No. 20 CV 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies

12

between the objective evidence and self-reports may suggest symptom exaggeration.").

Plaintiff argues that the ALJ failed to inquire about the reasons why she stopped treatment, positing that it was "entirely possible" she could not afford treatment or appreciate the need for ongoing medical care. Dkt. 15 at 13-14; Dkt. 20 at 10-11. This argument is not persuasive because plaintiff continued to see Dr. Salzverg for medication management and also sought treatment for physical conditions after stopping therapy. *See, e.g.*, R. 812, 820, 828, 836, 844, 934, 942, 960, 969, 978, 987, 1078, 1088, 1096. Also unavailing is plaintiff's objection that the ALJ improperly discounted her statements based on evidence that her condition improved with treatment. Dkt. 15 at 14. The ALJ did not equate plaintiff's improvement with an ability to work full time but reasonably cited it as one factor undermining plaintiff's complaints of disabling mental symptoms. R. 71, 75. *See Katrina C. v. Kijakazi*, No. 20 CV 3902, 2022 WL 198807, at \*3 (N.D. Ill. Jan. 21, 2022) (citing *Dallas E. H. v. Kijakazi*, No. 20 CV 2717, 2021 WL 4635802 at \*5 (N.D. Ill. Oct. 7, 2021)) ("[T]he ALJ did not improperly equate improvement of Dallas's mental condition with an ability to work full time. Instead, the ALJ cited evidence of Dallas's improved mental condition as evidence that undercut his own subjective testimony that his symptoms were disabling. She appropriately determined that the objective evidence of improvement suggested that Dallas was not as limited as he claimed.").

Finally, the ALJ did not err in considering that plaintiff is independent in her activities of daily living (cleaning, cooking, driving, laundry, dishes) and cares for her children and pets (aside from periods when the kids were removed from the custody of plaintiff and her husband due to their substance abuse). R. 69, 75, 709, 1240. The Seventh Circuit has made clear that "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). And contrary to plaintiff's suggestion, this is not a case where the ALJ equated plaintiff's ability to perform certain activities with an ability to work. Dkt. 15 at 15-16; Dkt. 20 at 11-12. The ALJ merely noted that plaintiff was able to engage in more robust activities than would be expected for a person with her claimed mental limitations. R. 75. This was entirely proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

The Court agrees with plaintiff that the ALJ did not properly address her limitations in performing the activities and the help she received from others. Dkt. 15 at 15-16; Dkt. 20 at 11-12. Regardless, it is well-established that an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing

14

*Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). And "even if reasonable minds could differ on the ALJ's rejection of [plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Here, the ALJ provided several valid reasons for discounting plaintiff's subjective statements and that decision was not patently wrong. *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.") (emphasis in original). Plaintiff's motion to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [15] is denied, and the Commissioner's motion for summary judgment [16] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Dated: 6/12/2026

15